**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**MASON SMITH,**

**Plaintiff,**

**vs.** **1:25-CV-750 (MAD/DJS)**

**PIA GHANIME, GREGORY B. STEPENETS, and COURTNEY L. BUTLER**

**Defendants.**

---

**APPEARANCES:** **OF COUNSEL:**

**MASON SMITH**
Ballston Spa, New York
Plaintiff, *pro se*

**OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL** **HEATHER LAMMARDO, AAG**
The Capitol
Albany, New York 12224
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On June 12, 2025, Plaintiff Mason Smith ("Plaintiff"), proceeding under a pseudonym, commenced this action against Dr. Deborah Murray and two unnamed defendants (Dr. Jane Doe and Dr. John Doe). Dkt. No. 1. On July 15, 2025, this Court granted Plaintiff's motion to proceed *in forma pauperis*. Dkt. Nos. 4, 6. On August 11, 2025, Plaintiff filed an amended complaint, naming as Defendants Dr. Pia Ghanime, Dr. Gregory B. Stepenets, and Courtney L. Butler ("Defendant"). Dkt. No. 13.

Plaintiff alleges two claims in his amended complaint: Substantive Due Process and Equal Protection. *See id.* On November 21, 2025, Defendants filed a motion to dismiss. Dkt. No. 29. Plaintiff filed a response, wherein he raised a new claim: Procedural Due Process. *See* Dkt. No. 40. Defendants filed a reply. Dkt. No. 42. With permission of the court, Dkt. No. 44, Plaintiff filed a sur-reply, Dkt. No. 46. Separately, Plaintiff has requested to change his pseudonym to "Sealed Plaintiff." Dkt. No. 57.

For the reasons that follow, Defendants' motion to dismiss is granted, and Plaintiff's request to proceed under a different pseudonym is denied.

## II. BACKGROUND[1]

On July 20, 2024, the Capital District Psychiatric Center ("CDPC") evaluated Plaintiff "during an acute mental health episode involving suicidal ideation and a specific plan to harm himself." Dkt. No. 13 ¶¶ 2, 5. Plaintiff, a homeless individual, "told Dr. Pia Ghanime and/or Dr. Gregory B. Stepenets, that if released, he would go to Price Chopper, purchase a knife, return to CDPC, and cut himself." *Id.* ¶¶ 3, 5. Defendant Dr. Ghanime had previously provided care for Plaintiff and "initially recommended continued hospitalization." *Id.* ¶6. Defendant Dr. Stepenets, her supervisor, disagreed, "citing homelessness as a barrier to inpatient treatment." *Id.* Plaintiff was then discharged from CDPC. *See id.* Defendant Butler, a social worker, "subsequently falsified state documentation to give legal and procedural legitimacy to the discharge." *Id.* ¶7.

After being discharged, "Plaintiff did exactly as he had warned—he purchased a knife and returned to CDPC, where he injured himself." *Id.* ¶8. Plaintiff was treated at Albany Medical Center, and "suffered serious physical and psychological harm." *Id.* Plaintiff alleges that

[1] The following facts are set forth in the Amended Complaint.

"Defendants treated Plaintiff differently from similarly situated individuals who were not homeless but exhibited suicidal ideation." *Id.* ¶9.

## III. DISCUSSION

### A. Legal Standards

#### *1. Motion to Dismiss*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement of relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to

relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570.

Additionally, courts must afford *pro se* plaintiffs "special solicitude." *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (citing *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988)). "A document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "This policy of liberally construing pro se submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotations and modifications omitted). Therefore, courts read *pro se* filings "to raise the strongest arguments that they suggest." *Id.* at 474 (citations omitted).

**B. Substantive Due Process**

Plaintiff's substantive due process claim rests on Defendants' "fail[ure] to protect him from a known and foreseeable risk of serious harm." Dkt. No. 13 ¶11. Specifically, Plaintiff claims that releasing him, knowing that he had threatened self-harm, put Plaintiff in a position of significant danger. *Id.* ¶12.

"[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) (collecting cases). There are two exceptions to this rule: when there is a "special relationship" between the state and the plaintiff, and "if [the state's] agents 'in

some way had assisted in creating or increasing the danger to the victim.'" *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008) (citation omitted). The Court will discuss each in turn.

First, "[s]pecial relationships arise ordinarily if a government actor has assumed an obligation to protect an individual by restricting the individual's freedom in some manner, as by imprisonment." *Lombardi v. Whitman*, 485 F.3d 73, 80 (2d Cir. 2007). "[I]nvoluntary custody [is] the linchpin of any special relationship exception." *Matican v. City of New York*, 524 F.3d 151, 156 (2d Cir. 2008). Here, Plaintiff's substantive due process claim is based on the government *not* confining him. *See* Dkt. No. 13 ¶¶11–12. Plaintiff has presented no legal authority to support the proposition that the government has a special relationship with the Plaintiff when the claim is based on *non*-confinement. Plaintiff argues that at the time the decision to not institutionalize him was made, he was under state custody. *See* Dkt. No. 40 ¶¶7–10. Even assuming this to be true, that does not automatically mean the special relationship was present when he was released from the facility. The government has an obligation to protect people within its custody but does not "become the permanent guarantor of an individual's safety by having once offered him shelter." *DeShaney*, 389 U.S. at 201. The Court finds that Plaintiff has not established at this stage of the case that the special relationship exception applies. *Cf. Rousey v. United States*, 921 F. Supp. 1550, 1558 (E.D. Ky. 1996), *aff'd*, 115 F.3d 394 (6th Cir. 1997) ("In cases where the patient is voluntarily admitted, there is no special relationship because the physician cannot compel confinement") (citing *Sellers v. United States*, 870 F.2d 1098 (6th Cir. 1989)); *Lucas v. Hillenbrand*, No. 25-CV-24, 2026 WL 1078949, *12 (D. Mont. Apr. 21, 2026) ("Lucas' commitment is not functionally equivalent to a lifetime commitment. Because the constitutional duty to provide adequate mental treatment before discharge has only been recognized in the

context of indeterminate commitments, Lucas cannot allege a colorable due process claim under this theory").

Second, under the state-created danger exception, "state actors may be liable under section 1983 if they affirmatively created or enhanced the danger of private violence." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 428 (2d Cir. 2009). This exception requires an "affirmative act" as "[i]t is not enough to allege that a government actor failed to protect an individual from a known danger of bodily harm." *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007). The state-create danger exception may also rely on a "wrongdoer" whose violence the state facilitates in some manner. *See id.* at 80. Plaintiff has not established that this exception applies here. *See, e.g., Lucas*, 2026 WL 1078949, at *13 (dismissing claim which asserted a state-created danger where "the crux of Lucas' argument is that State Defendants' affirmative decision to prematurely discharge Lucas without appropriate supervision left him in a foreseeable situation that was more dangerous than if he remained in state custody"). Plaintiff has not sufficiently alleged that there is a "wrongdoer," and that the danger was created by Defendants rather than through his own mental health crisis. *See* Dkt. No. 13 ¶8.[2] Therefore, Plaintiff has not presented enough facts to warrant application of the state-created danger exception.

**C. Procedural Due Process**

***1. Falsifying Documents***

[2] Plaintiff argues that the Second Circuit in *Okin* "held that police officers violated substantive due process when they removed a person in psychiatric crisis from a safe location and left him in an unsafe environment." Dkt. No. 40 ¶19. This misrepresents *Okin*, which was about law enforcement's response to domestic violence and whether the police adequately protected the victim from her abuser where they were aware of numerous complaints of abuse. *See Okin,* 577 F.3d at 430.

In his amended complaint, Plaintiff alleges that Defendants "intentionally falsified documents" and "wrote false psychiatric evaluations and notes." Dkt. No. 13 ¶¶ 13–14. In his response in opposition to the motion to dismiss, Plaintiff argues that Defendant's conduct violates procedural due process. *See* Dkt. No. 40 ¶¶1, 43-47. Plaintiff did not clearly articulate a procedural due process claim in his amended complaint, *see* Dkt. No. 13 ¶¶ 10–16, but the Court will consider it in light of the special solicitude the Court must show *pro se* litigants. *Erickson*, 551 at 94.

It is well-established that "[t]he introduction of false evidence in itself violates the due process clause." *Yuan v. Rivera*, 48 F. Supp. 2d 335, 346 (S.D.N.Y. 1999) (quoting *Morrison v. Lefevre*, 592 F. Supp. 1052, 1073 (S.D.N.Y. 1984)). "To succeed on a fabricated-evidence claim, a plaintiff must establish that 'an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[red] a deprivation of life, liberty, or property as a result.'" *Ashley v. City of New York*, 992 F.3d 128, 139 (2d Cir. 2021). Here, Plaintiff does not allege that there was a prosecution or any other proceeding during which the purportedly false documents were used against him. As such, he has failed to state a fabricated evidence claim.

***2. State-Created Liberty Interest***

In his response, Plaintiff argues that "Defendants violated Plaintiff's Due Process rights to a state-created liberty interest under New York Mental Hygiene Law § 9.39." Dkt. No. 40 at 15. Again, although this claim was not included in the amended complaint, *see* Dkt. No. 13 ¶¶ 10–16, the court will evaluate it because of Plaintiff's *pro se* status. *See Erickson*, 551 at 94.

When a "state has created a substantive property or liberty interest, the state cannot deprive a person of such interest without meeting certain minimum procedural requirements set

by the Due Process Clause of the Fourteenth Amendment." *Kadushin v. Port Auth. of New York & New Jersey*, 603 F. Supp. 1146, 1151 (E.D.N.Y. 1985). Though "New York's Mental Hygiene Law recognizes a person's liberty interest," *Johnson v. Unity Health Sys.*, No. 08-CV-6258, 2010 WL 1404123, *4 (W.D.N.Y. Mar. 30, 2010), Plaintiff's claim is the mirror-image of the ones courts have found legitimate, *Atkinson v. Okocha*, No. 20-CV-4497, 2021 WL 1550493, *4 (E.D.N.Y. Apr. 19, 2021) ("Plaintiff has a liberty interest in remaining *free* from involuntary commitment to a mental hospital") (emphasis added); *Smalls v. Kirby Psychiatric Ctr.*, No. 25-CV-775, 2025 WL 2410610, *4 (S.D.N.Y. Aug. 19, 2025) ("To state a procedural due process claim regarding the involuntary commitment to a hospital, a plaintiff must allege facts suggesting 'that they have *a protected liberty interest in not being involuntarily committed* to a psychiatric institution and that they were deprived of that interest without due process of law'") (quoting *Bailey v. Pataki*, 708 F.3d 391, 399 (2d Cir. 2013)) (emphasis added); *Brooks v. Creahan*, No. 9:15-CV-90, 2015 WL 13850057, *9 (N.D.N.Y. June 10, 2015).

As these cases hold that a person has an interest in being free from involuntary commitment, the Court declines to extend the meaning of "liberty interest" to encompass an interest in being committed to a mental institution. At its core, the Due Process Clause protects "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Plaintiff has not presented any legal justification for equating a "liberty interest in being free from unreasonable confinement," *Van Cortlandt v. Westchester Cnty.*, No. 07-CV-1783, 2009 WL 10740045, *7 (S.D.N.Y. Sept. 18, 2009), *on reconsideration*, 2009 WL 10739939 (S.D.N.Y. Nov. 9, 2009), with a desire to receive in-patient mental health services. Plaintiff's claim is therefore dismissed.

**D. Equal Protection**

Plaintiff alleges differential treatment because he is homeless. Dkt. No. 13 ¶10. In his response, Plaintiff construes his claim as falling under a homelessness-as-class theory, and a "class-of-one" theory. *See id.* ¶¶28–35. Plaintiff has not stated a claim under either theory.

"The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). "This clause prohibits both 'prototypical' discrimination based on membership in a protected class and 'class of one' discrimination where the plaintiff alleges that he has been 'intentionally treated differently from others similarly situated' without a 'rational basis for the difference in treatment.'" *Garanin v. New York City Hous. Pres. & Dev.*, 673 Fed. Appx. 122, 124 (2d Cir. 2016) (summary order) (quoting *Harlen*, 273 F.3d at 499).

Under the Equal Protection Clause, courts apply one of three types of scrutiny: strict, intermediate, and rational basis. *United States v. Perez*, 6 F.4th 448, 453 (2d Cir. 2021). As homelessness is not a suspect class, classifications based on an individual's homelessness are subject to rational basis review. *See Yifru v. Tietz*, No. 22-CV-1385, 2022 WL 956704, *8 (S.D.N.Y. Mar. 29, 2022) ("Homelessness is not a suspect class for purposes of an Equal Protection analysis"); *Posr v. Dolan*, No. 02-CV-659, 2003 WL 22203738, *5 (S.D.N.Y. Sept. 23, 2003) ("[R]ational basis review governs disparate treatment of non-suspect classes"); *see also Nourish Our Neighbors v. City of Dayton, Ohio*, No. 3:24-CV-299, 2026 WL 1800996, *15 (S.D. Ohio June 23, 2026) ("Time and time again courts have held that low-income individuals do not qualify as a suspect class").

Rational basis review "demands only that the classification be rationally related to a legitimate governmental interest." *United States v. Amalfi*, 47 F.4th 114, 124 (2d Cir. 2022). "A

classification subject to rational basis review 'must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Yuen Jin v. Mukasey*, 538 F.3d 143, 158 (2d Cir. 2008) (*quoting FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993)). "[R]ational basis review is an extremely deferential standard by which to scrutinize government action." *Vizio, Inc. v. Klee*, No. 3:15-CV-00929, 2016 WL 1305116, *21 (D. Conn. Mar. 31, 2016).

In their motion, Defendants provided a rationale for why homelessness was considered in deciding whether to admit Plaintiff:

> The state has limited resources and an interest in ensuring that inpatient beds are available for those who meet specific strict criteria for acute care, including imminent risk. Assessing that risk requires evaluating the sincerity of expressed suicidal ideation and homelessness is a potential motive for lack of candor. The state has an interest in protecting individuals' rights to liberty and autonomy and may determine that a different intervention, such as one that directly addresses the need for housing, would better address the needs of a homeless individual.

Dkt. No. 42 at 5. Plaintiff has not presented any legal authority which supports the conclusion that Defendants violated the Equal Protection Clause by considering his homelessness as a factor in determining whether to admit him where they also considered a legitimate independent basis such as resource availability. *Cf. Martinez v. Wolfenbarger*, No. 2:24-CV-547, 2025 WL 3228298, *7 (D. Utah Nov. 19, 2025) ("[B]ecause public safety is a rational, independent basis here, whether Officer Mullenax was also motivated by animus is irrelevant to the claim").

Next, "[a] class-of-one claim exists 'where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010); *see also Peterson v. Bank Markazi*, 121 F.4th 983, 1007 (2d Cir. 2024). "This requires

the claimant to show an extremely high degree of similarity between themselves and . . . the persons alleged to receive irrationally different treatment." *Peterson*, 121 F.4th at 1007 (citations and quotation marks omitted).

Plaintiff has not stated such a claim. Plaintiff alleges that he was treated differently from people who are not similarly situated, *i.e.*, non-homeless individuals. Dkt. No. 13 ¶9. His claim is therefore not cognizable as a class-of-one claim. *See Raiser v. City of Murrieta*, No. 19-CV-183, 2021 WL 683173, *6 (C.D. Cal. Jan. 12, 2021), *R. & R. adopted*, 2021 WL 677902 (C.D. Cal. Feb. 22, 2021) ("To the extent Raiser is alleging the conduct of defendants . . . was based on Raiser's status as a homeless person, homeless individuals are not a protected class. . . . Raiser, however, fails to allege these actions are not rationally related to a legitimate purpose") (collecting cases).[3]

**E. Proper Filing of the Motion**

Plaintiff argues that the motion to dismiss should be denied because "defendants' counsel has failed to serve plaintiff with a copy of the motion to dismiss." Dkt. No. 40 ¶1. However, under the Federal Rules of Civil Procedure, "a paper is served . . . by . . . sending it to a registered user by filing it with the court's electronic-filing system." FED. R. CIV. P. 5(b)(2)(E). This rule applies to *pro se* litigants who are registered users of the electronic filing system. *See Lykens v. Peters*, No. 4:24-CV-01385, 2025 WL 383803, *3 n.7 (M.D. Pa. Feb. 4, 2025), *aff'd*, No. 25-1393, 2025 WL 2945674 (3d Cir. Oct. 17, 2025). Here, Defendants' motion was filed via ECF, and Plaintiff received email notice. *See* Dkt. No. 29. The motion was thus properly filed.

[3] As the Court has dismissed Plaintiff's claims, it declines to address Defendants' alternative qualified immunity argument. See Dkt. No. 29-1 at 7.

## IV. CHANGE OF PSEUDONYM

Plaintiff has "notifie[d] the Court that the pseudonym by which the plaintiff will proceed is Sealed Plaintiff." Dkt. No. 57. There is no right to a pseudonym; the general rule is that all the parties must be named. FED. R. CIV. P. 10(a). However, a court may allow a plaintiff to proceed pseudonymously, following a ten-part balancing test identified by the Second Circuit:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008). Plaintiff has not presented, and the Court has not found any case law concerning when a plaintiff may change the pseudonym he is using., For the purposes of Plaintiff's filing in this case, the Court will assume that the same balancing test applies to changes in pseudonyms. The factors do not weigh in favor of granting Plaintiff a changed pseudonym. Decisively, since "the plaintiff's identity [as "Mason Smith"] has thus far [not] been kept confidential," *id.* at 190, the Court is not persuaded that changing the pseudonym would facilitate Plaintiff's privacy. The Court has considered Plaintiff's "notice to the court regarding harassment, surveillance, and interference with pending

proceedings," Dkt. No. 50, but does not find that a changed pseudonym would facilitate Plaintiff's privacy. Therefore, the motion to change Plaintiff’s pseudonym to "Sealed Plaintiff" is denied.[4]

## V. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss, Dkt. No. 29, is **GRANTED**; and the Court further

**ORDERED**, that Plaintiff's amended complaint, Dkt. No. 13, is **DISMISSED with prejudice**; and it is further

**ORDERED**, that Plaintiff's motion requesting a changed pseudonym, Dkt. No. 57, is **DENIED**; and it is further

**ORDERED**, that the Clerk is respectfully directed to close this action; and it is further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 8, 2026
Albany, New York

Mae A. D’Agostino
U.S. District Judge

[4] Plaintiff has not requested leave to amend in either his response or sur-reply. *See* Dkt. Nos. 40, 46. Nevertheless, Plaintiff has been given permission to amend, once, *see* Dkt. No. 12, and the Court finds that further amendment would be futile.